cause, and awarding the damages found in favor of the libellants in the second, with costs in each case.

[NOTE. This decision was affirmed by the supreme court in The Clarita and The Clara, 23 Wall. (90 U. S.) 1. See Case No. 2,788, note.]

## Case No. 2,790.

### CLARA v. EWELL.

[2 Cranch, C. C. 208.] [1]

Circuit Court, District of Columbia. June Term, 1820.

EVIDENCE—PROOF OF AGE—MEMORANDUM BY DECEASED PERSON.

An old entry in a memorandum-book of a deceased person, stating the ages of the several members of the writer's family, may be given in evidence to prove the age of a witness.

To prove the age of Mrs. Storer, a witness in this cause, the defendant [Thomas Ewell] offered a memorandum-book in the handwriting of the Rev. Lee Massy, deceased, dated April 19th, 1777, in which he stated the names and ages of his family, who were then inoculated for the small-pox, and the different modes of treatment and different doses of medicine for their respective ages. Mrs. Storer was then one of his family, and her name was placed in the class of those between six and ten years old.

Mr. Jones, for plaintiff, objected to the competency of the evidence.

But THE COURT (nem. con.) overruled the objection, and permitted the memorandum to be read to the jury.

CLARA CLARITA, The. See Cases Nos. 2,-787–2,789.

## Case No. 2,791.

### The CLARA DAVIDSON.

[6 Wkly. Notes Cas. 356.]

District Court, E. D. Pennsylvania. Jan. 10, 1879.

ADMIRALTY PRACTICE—DECREE AGAINST DECEASED STIPULATOR.

A decree rendered against a stipulator after his death, although in ignorance of that fact, is void, and will be set aside on motion.

In admiralty. McCoy and others, owners of the schooner Eliza Ann, filed a libel for the collision against the schooner Clara Davidson. The master of the latter vessel appeared and made claim with one Edwards as stipulator. The suit proceeded and a decree for half damages was made against the claimant and stipulator, in 1876. Edwards had died before the decree, but the fact was unknown to libellant, had never been sug-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

gested of record, and no substitution was made.

E. B. Watson, for administrator, moved to vacate the decree.

J. W. Carleton, contra.

THE COURT (CADWALADER, District Judge), holding the decree against the surety void by reason of his previous death, ordered it vacated.

## Case No. 2,792.

### The CLARA M. PORTER.

[3 Ware, 39; [1] 18 Law Rep. 678.]

District Court, D. Massachusetts. Jan., 1856.

COLLISION—SAIL AND SAIL—WIND FREE AND CLOSE-HAULED.

1. When a vessel comes down with the wind free in an open sea, to speak another vessel which is close hauled on the starboard tack, the former has the entire duty of so manoeuvring as to avoid a collision, and it is the duty as well as the right of the latter, in case a collision is apprehended, to keep her course.

2. If a vessel with the wind free attempts, without necessity, to cross the bows of a vessel close-hauled, and a collision takes place, the former vessel will be held prima facie to be in fault.

In admiralty.

R. H. Dana, Jr., for libelants.

Bartlett and Thaxter, for claimants.

WARE, District Judge (holding the court for SPRAGUE, District Judge). The schooner Jenny Lind, a vessel of about eighty tons burthen, duly licensed for carrying on the codfishery, sailed from Southport, in Maine, on the 4th of April, fitted out for a fishing voyage on the Bank fisheries. On the 5th of May, near Sable island, while pursuing the objects of her voyage, and having on board two hundred and seventy quintals of fish, being then under sail, close hauled to the wind on her starboard tack, she saw a sail ahead at the distance of one-and-a-half or two miles, which proved to be the Clara M. Porter. The Jenny Lind was sailing on a north-westerly course, with a six knot breeze from the northeast, and the vessel seen was sailing nearly, if not precisely, in an opposite direction on her larboard tack. She was seen from the Jenny Lind over her weather-bow, and consequently the line on which she was sailing was to the windward. The vessels being under sail, on lines nearly, if not exactly, parallel, the Clara M. Porter would have passed to the windward. But soon after she was seen, she changed her course, put off before the wind, and came down with the intention of crossing the line of the Jenny Lind and speaking her at the leeward. From some miscalculation or mismanagement in one or the other vessel, or in both, instead of passing the Jenny Lind, as

---

[1] [Reported by George F. Emery, Esq.]